1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

GERALD LEITZKE,

     Plaintiff,

  v.

KELSEY NICOLE F/V, et al.,

     Defendants.

C15-439 TSZ

ORDER

13

  THIS MATTER comes before the Court on defendant Joshua Miller's motion for

partial summary judgment, docket no. 71, and plaintiff Gerald Leitzke's motion for

sanctions and request to preclude the use of deposition testimony, docket no. 76.  Having

reviewed the memoranda, declarations, and exhibits submitted by the parties, the Court

enters the following order:

**Background**

  This is a case arising in Admiralty, pursuant to the Jones Act, 46 U.S.C. § 688, in

which plaintiff Gerald Leitzke ("Leitzke") alleges he sustained physical injuries due to

the lack of seaworthiness of the fishing vessel Kelsey Nicole, is due maintenance and

ORDER - 1

1   cure and unearned wages resulting from those injuries, and that he was subjected to

2   sexual harassment while working as a crew member.

3         Leitzke and Joshua Miller ("Miller") first contracted to work together in 2011 to

4   make joint use of Leitzke's SE Alaska salmon purse seine permit.  The parties entered

5   into an agreement that Leitzke would work as a deckhand on Miller's boat, the F/V

6   Kelsey Nicole, for the 2011 salmon fishery in Alaska.  Miller Decl. at ¶ 5 (docket no. 61).

7   Over the period of June 12, 2011 to September 15, 2011, Leitzke worked aboard the

8   Kelsey Nicole as a crew member in Alaska.  *See* Leitzke Decl. at ¶¶ 13, 52 (docket

9   no. 78).  Leitzke alleges that, after his arrival to the vessel, Miller and other crew

10  members made "unwanted and inappropriate" sexual comments and gestures to and about

11  him, propositioned him to perform sexual acts, and continued in their conduct despite

12  Leitzke's "repeated complaints and objections."  Compl. at ¶¶ 3.8-3.9 (docket no. 1);

13  Leitzke Decl. in Resp. to Def.'s Partial Mot. Dismiss at ¶¶ 8-9 (docket no. 20).

14        Following the 2011 salmon fishery, Miller hired Leitzke as a crew member on the

15  Kelsey Nicole for the 2012 squid fishery in California.  Answer at ¶ 3.11 (docket no. 31).

16  Over the period of April 7, 2012 to April 12, 2012, Leitzke helped transport the vessel

17  from Everett, Washington to Moss Landing, California.  Compl. at ¶ 3.29 (docket no. 1).

18  Leitzke alleges that during this voyage he experienced "unwanted and inappropriate

19  sexual comments and gestures," was again propositioned to "perform sexual acts," and

20  was threatened by one of the crew members despite his "repeated complaints and

21  objections."  *Id.* at ¶¶ 3.33-3.34.  Leitzke departed the vessel on April 13, 2012, and did

22

23

ORDER - 2

1  not return to participate in the squid fishery.  *Id.* at ¶ 3.37.  He did not file an

2  administrative claim in California relating to the alleged sexual harassment.  Leitzke Dep.

3  at 36:13-18, Ex. A to Sixth Park Decl. (docket no. 73-1); Pl's Resp. to Interrogatories at

4  14:25, Ex. R. to Sixth Park Decl. (docket no. 73-18).

5       In May 2011, Leitzke signed a crew contract as a part of his seine permit lease

6  agreement with Miller.  The contract stipulated that Leitzke would receive "a full crew

7  share of 8% after fuel and inseason [sic] moorage expenses deducted from gross stock

8  and equal share of grub expense deducted from crew share." Southeast Seine Permit

9  Lease, Ex. A to Miller Decl. (docket no. 61-1).  During all relevant times that Leitzke

10 worked aboard the Kelsey Nicole, no more than five crew members worked,

11 concurrently, on the vessel.  Sixth Park Decl. at ¶ 20 (docket no. 73); Pl's Resp. to

12 Interrogatories at 5:3-7, 6:25-7:2, Ex. R to Sixth Park Decl. (docket no. 73-18).

13 **Standard of Review**

14      "The court shall grant summary judgment if the movant shows that there is no

15 genuine dispute as to any material fact and the movant is entitled to judgment as a matter

16 of law." Fed. R. Civ. P. 56(a).  The moving party is entitled to judgment as a matter of

17 law when the non-moving party fails to make a sufficient showing on an essential

18 element of a claim in the case on which the nonmoving party has the burden of proof.

19 *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  There is no genuine issue of fact for

20 trial where the record, taken as a whole, could not lead a rational trier of fact to find for

21 the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

22

23

574, 586 (1986) (non-moving party must present specific, significant probative evidence, not simply "some metaphysical doubt."); Fed. R. Civ. P. 56(e).

Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).

**Discussion**

**1. State Law Sexual Harassment Claims**

  **(a) Washington**

The Washington Law against Discrimination ("WLAD"), RCW 49.60 *et seq.*, defines an employer as "any person acting in the interest of an employer, directly or indirectly, who employs eight or more persons, and does not include any religious or sectarian organization not organized for private profit." RCW 49.60.040(11). As such, employers of fewer than eight employees are exempt from the remedies provided in a private action under the WLAD. *Cole v. Harveyland, LLC*, 163 Wash. App. 199, 203 (2011).

Plaintiff states that the crew consisted of only five crew members for all of the relevant times that he worked on the Kelsey Nicole. Sixth Park Decl. at ¶ 20 (docket

ORDER - 4

1    no. 73); Pl's Resp. to Interrogatories at 5:3-7, 6:25-7:2, Ex. R to Sixth Park Decl. (docket

2    no. 73-18).  Plaintiff's WLAD claim fails because fewer than eight crewmembers worked

3    on the Kelsey Nicole during the timeframe in which he claims to have experienced sexual

4    harassment.  Defendant's motion for summary judgment on plaintiff's WLAD sexual

5    harassment claim is GRANTED.

6        **(b) California**

7        The California Fair Employment and Housing Act ("FEHA"), Gov. Code § 12900

8    *et seq.*, requires that a plaintiff exhaust his administrative remedies before filing a claim

9    in court pursuant to the statute.  "Exhaustion in this context requires filing a written

10   charge with the Department of Fair Employment and Housing ('DFEH') within one year

11   of the alleged unlawful employment discrimination [or retaliation], and obtaining notice

12   from DFEH of the right to sue."  *Guyton v. Novo Nordisk, Inc.*, No. 15-00009

13   MMMAGRX, 2015 WL 9165954, at *7 (C.D. Cal. Dec. 16, 2015) (citing *Rodriguez v.*

14   *Airborne Express*, 265 F. 3d 890, 896 (9th Cir. 2001)).  "[I]n the context of the Fair

15   Employment and Housing Act ... 'the failure to exhaust an administrative remedy is a

16   jurisdictional, not a procedural defect,' and thus ... the failure to exhaust administrative

17   remedies is a ground for a defense summary judgment."  *Id.* (quoting *Martin v. Lockheed*

18   *Missiles & Space Co.*, 29 Cal. App. 4th 1718, 1724, 35 Cal. Rptr. 2d 181 (1994)).

19       Plaintiff admitted at his deposition and in his discovery responses that he never

20   filed an administrative claim in California relating to the alleged sexual harassment.

21   Leitzke Dep. at 36:13-18, Ex. A to Sixth Park Decl. (docket no. 73-1); Pl's Resp. to

22

23

ORDER - 5

1  Interrogatories at 4:25, Ex. R. to Sixth Park Decl. (docket no. 73-18).   As such, the Court

2  lacks jurisdiction over this claim and defendant's motion for summary judgment on

3  plaintiff's FEHA sexual harassment claim is GRANTED.

4       **(c) Alaska**

5       The Alaska Human Rights Act ("AHRA"), A.S. 18.80 *et seq.*, provides that it is

6  unlawful for an employer to discriminate against a person on account of sex, though it

7  does not specifically prohibit discrimination due to sexual orientation.[1]  A.S.

8  18.80.220(a)(1)-(6).   The statute defines "employer" as a person "who has one or more

9  employees in the state."  A.S. 18.80.300(5).  Alaska courts consider federal Title VII

10  precedent as guidance for determining the scope of AHRA protections.  *See, e.g.,*

11  *Peterson v. State Dep't of Nat. Res.*, 236 P.3d 355, 363 (Alaska 2010).  Independent

12  contractors do not qualify as "employees" under Title VII.  *See, e.g., Adcock v. Chrysler*

13  *Corp.*, 166 F.3d 1290, 1292 (9th Cir. 1999) ("Title VII protects employees, but does not

14  protect independent contractors").

15       Under Title VII federal precedent, whether plaintiff qualifies as an "employee"

16  depends on the analysis of several factors, as articulated in *Murray v. Principal Fin. Grp.*

17  *Inc.*, 613 F.3d 943, 945-46 (9th Cir. 2010).[2]  Defendant presented undisputed evidence,

18  _____

19  [1] This Court notes that, while not yet addressed by the Alaska state courts, the Ninth Circuit has
   recognized that claims for same-sex sexual harassment due to an individual not conforming to male
20  stereotypes are actionable under Title VII.  *See Nichols v. Azteca Rest. Enterprises, Inc.*, 256 F.3d 864,
   875 (9th Cir. 2001).

21  [2] Relevant factors include the following: "[1] the skill required; [2] the source of the instrumentalities and
   tools; [3] the location of the work; [4] the duration of the relationship between the parties; [5] whether the
22  hiring party has the right to assign additional projects to the hired party; [6] the extent of the hired party's

23

ORDER - 6

under four of the *Murray* factors, that helps to support a determination of independent

contractor status: (1) plaintiff was a skilled fisherman with decades of experience,

Leitzke Dep. at 82:20-22, 84:6-7, Ex. A to Sixth Park Decl. (docket no. 73-1); (2) the

crew was paid via a share allotment of the catch, Second Miller Decl. at ¶ 4 (docket no.

72); (3) defendant issued 1099s to the crew,[3] *see* Ex. 1 to Second Miller Decl. (docket no.

72-1); and (4) crewmembers were responsible for paying their own licensing fees and

providing their own boots and rain gear, Leitzke Dep. at 123:10-20 (docket no. 73-1).

Plaintiff did not allege any facts pertinent to the *Murray* factors to support his claim of

employee status.

Additionally, plaintiff's past statements preclude him from claiming he was not an

independent contractor for the Kelsey Nicole.  In the earlier case of *Cox v. Leitzke, et al.,*

King County Superior Court, No. 94-2-02004-8, ("*Cox v. Leitzke* litigation") plaintiff

made statements about the employment status of crew members working aboard fishing

vessels.  In that proceeding, plaintiff stated that "[t]he relationship between a vessel

owner/operator and the crew employed on a lay share basis is more typical of a joint

venture relationship than employer/employee relationship."  Arbitration Brief at 16,

Ex. B to Eighth Park Decl. (docket no. 83-2).  During his deposition in this case, in

---

discretion over when and how long to work; [7] the method of payment; [8] the hired party's role in
hiring and paying assistants; [9] whether the work is part of the regular business of the hiring party; [10]
whether the hiring party is in business; [11] the provision of employee benefits; and [12] the tax treatment
of the hired party."  *Murray v. Principal Fin. Grp., Inc.*, 613 F.3d at 945-46 (citing *Nationwide Mut. Ins.
Co. v. Darden*, 503 U.S. 318, 323 (1992)).

[3] Plaintiff was not paid in his own name for the 2011 season, per his 1099 tax form, but rather through his
business entity, Mermaid II, Inc.  Second Miller Decl. at ¶ 5 (docket no. 72); *see* Ex. 1 to Second Miller
Decl. (docket no. 72-1 at 4).

1  response to the question, "Did you understand that you would be an independent

2  contractor for the 2012 squid fishery?" plaintiff testified that "[c]ommercial fishermen

3  are considered self employed and responsible for their own taxes." Leitzke Dep. 212:22

4  to 213:2, Ex. A to Sixth Park Decl. (docket no. 73-1).  Plaintiff also testified that when he

5  owned his own fishing vessel, he considered crew members independent contractors.  *Id.*

6  at 125:21-25.

7        Furthermore, plaintiff's crew contract for the 2011 salmon fishery in Alaska stated

8  that he would be paid, not as an employee, but rather would receive "a full crew share of

9  8% after fuel and inseason [sic] moorage expenses deducted from gross stock and equal

10  share of grub expense deducted from crew share." Southeast Seine Permit Lease, Ex. A

11  to Miller Decl. (docket no. 61-1).  Plaintiff's 2013 crew contract with defendant stated

12  that crew members were independent contractors,[4]  2013 Crew Contract at ¶ C, Ex. 24 to

13  Second Miller Decl. (docket no. 72-24), as did his own crew contracts for the fishing

14  vessel formerly owned by plaintiff, the St. Rocco,[5] Crew Agreement at ¶ 3, Ex. S to Sixth

15  Park Decl. (docket no. 73-19).

16        For the foregoing reasons, the Court finds that plaintiff worked as an independent

17  contractor, and not an employee, during the 2011 salmon fishery in Alaska.  Therefore,

18  _____

19  [4] Plaintiff's crew contract for the 2013 Alaska seine fishing season, on defendant's F/V Esperanza, also
expressly stated that "crewmembers are private contractors **not employees** and are subject to the tax and

20  child support laws as they apply to private contractors." Ex. 24 to Second Miller Decl. (docket no. 72-24)
(emphasis in original).

21  [5] Crew Agreement formerly used by plaintiff for his F/V St. Rocco stated: "Crewmember is self-
employed and responsible for all taxes as a result of his/her earnings." Ex. S to Sixth Park Decl. (docket

22  no. 73-19).

23

ORDER - 8

1   plaintiff's claim fails under AHRA, and defendant's motion for summary judgment on

2   plaintiff's AHRA sexual harassment claim is GRANTED.

3        **2. Plaintiff's Request for Sanctions**

4        Plaintiff moves for sanctions against defendant for using pleadings from the *Cox v.*

5   *Leitzke* litigation.  Resp. at 22 (docket no. 76).  Plaintiff claims that defendant's use of

6   statements from this case, and other evidence, violates RPC 4.4, RPC 8.4(d), and Fed. R.

7   Civ. P. 56(h).  Plaintiff does nothing more than provide conclusory statements that

8   defendant acted in violation of these rules.

9        As to plaintiff's claims regarding defendant's improper disclosure of his mental

10  health records, the remedy provided under the statute is for the wronged party to bring

11  suit against the party who "has willfully released confidential information or records

12  concerning him," for the greater of either "one thousand dollars," or "three times the

13  amount of actual damages sustained, if any."  RCW 70.02.230(6)(a).  The statute requires

14  plaintiff to bring an action to recover any damages due to such disclosure, which he has

15  not done.  The Court DENIES plaintiff's motion for sanctions.

16       **3. Deposition of Anthony Senna**

17       Rule 30(b)(1) requires that a party seeking a deposition give "reasonable written

18  notice to every other party."  Fed. R. Civ. P. 30(b)(1).  "Commonly, courts find that

19  notice of at least five days is sufficient for a party's deposition."  *Gamboa v. King Cnty.*,

20  C06-1034RSM, 2008 WL 509324, at *1 (W.D. Wash. Feb. 22, 2008).  Notices of

21  absence by counsel have no legal significance in the determination of reasonableness.

22

23

*See Khoa Hoang v. Trident Seafoods Corp.*, C06-1158 RSL, 2007 WL 2138780, at *1 (W.D. Wash. July 23, 2007) (finding "defense counsel's absence during the final two weeks of discovery does not justify a moratorium on discovery" even when counsel was not present to receive deposition notices).

Plaintiff requests the Court to preclude defendant from the use of Anthony Senna's deposition because defendant's counsel conducted the deposition at a time when he knew that plaintiff's counsel would be unavailable.  Plaintiff's attorney filed a notice of absence that stated he would be unavailable on dates including January 9, 2016, through January 15, 2016, and February 1 through February 29, 2016, and requested that no proceedings be scheduled during these periods.  Notice of Absence (docket no. 50). Defendant objected to the long duration of absence specified by plaintiff, and informed him by letter that "scheduling some matters during the periods of your absences might be unavoidable."  Ex. E to Eighth Park Decl. (docket no. 83-5).  Moreover, defendant's counsel informed plaintiff's counsel about the deposition scheduled for January 15 via email on January 8 at approximately 11:30 AM.  Ex. F. to Eighth Park Decl. (docket no. 83-6).  The attorneys exchanged additional emails later that same day, and plaintiff did not object to the timing of the deposition before it occurred.  Exs. H & I to Eighth Park Decl. (docket nos. 83-7 and 83-8).  Therefore, plaintiff's request to preclude defendant from the use of Anthony Senna's deposition is DENIED.

**Conclusion**

For the foregoing reasons, the Court GRANTS defendant's motion for partial summary judgment, docket no. 71, and DENIES plaintiff's motion for sanctions and request to preclude defendant from using the deposition testimony of Anthony Senna, docket no. 76.

IT IS SO ORDERED.

Dated this 27th day of April, 2016.

Thomas S. Zilly
United States District Judge

ORDER - 11